UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KAREN DENOYER,

                        Plaintiff,

          -against-

PMI SECURITY PROTECTION INC., a/k/a PMI
SECURITY SERVICES, a/k/a PMI SECURITY,
a/k/a PMI, MANNO ASSOCIATES, INC., PETER
MANNO, SR., and WILLIAM CHERRY,

                       Defendants.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

15 Civ. 4834 (KMK)(JCM)

To the Honorable Kenneth M. Karas, United States District Judge:

      This is an action pursuant to the Fair Labor Standards Act ("FLSA") and New York

Labor Law ("NYLL"), by which plaintiff Karen DeNoyer ("Plaintiff") seeks to recover unpaid

wages and overtime pay, liquidated damages and attorneys' fees and costs. (Docket No. 1).  On

April 17, 2017, the Court issued an Order of Default against defendants PMI Security Protection

Inc., a/k/a PMI Security Services, a/k/a PMI Security, a/k/a PMI ("PMI"), Manno Associates,

Inc. and Peter Manno, Sr. (collectively, "Defendants").[1] (Docket No. 58).  This matter was

referred to me to conduct an inquest into damages. (Docket No. 59).  For the reasons below, I

respectfully recommend that the Court enter a default judgment in favor of Plaintiff and against

Defendants, jointly and severally, in the total amount of $62,147.13.

---

[1] Plaintiff's claims against defendant William Cherry were dismissed with prejudice on November 21, 2016.
(Docket No. 51).

## I. BACKGROUND

### A. Procedural History

Plaintiff commenced this action by filing her complaint ("Complaint") on June 22, 2015. (Docket No. 1). Defendants filed their answer ("Answer") on November 2, 2015. (Docket No. 10). On June 29, 2016, the Court granted a motion to withdraw submitted by Defendants' attorney. (Docket 39). Thereafter, Defendants failed to appear at conferences scheduled for August 11, 2016 and September 14, 2016, and the Court issued an Order to Show Cause directing Defendants to show cause on December 8, 2016 why a default judgment should not be granted against them. (Docket No. 52). After Defendants failed to appear at the show cause hearing, the Court issued an Order of Default holding that Defendants "are in default." (Docket No. 58). The Court referred the matter to the undersigned to conduct an inquest. (Docket No. 59). Plaintiff filed a Notice of Inquest (Docket No. 62) and various documentary evidence in support of her claim for damages, including a Declaration of John E. Malley ("Malley Decl.") (Docket No. 63); an Affidavit of Karen DeNoyer ("DeNoyer Aff.") (Docket No. 63-1), with accompanying exhibits; and an affidavit of John E. Malley ("Malley Aff.") (Docket No. 63-9), with accompanying exhibits. Defendants have submitted no response regarding their default or the damages inquest.

### B. Factual Background

Given Defendants' default, the well-pleaded allegations contained in Plaintiff's Complaint are deemed to be true, except for those relating to damages. *See Ortega v. JR Primos 2 Rest. Corp.*, No. 15 Civ. 9183 (JCF), 2017 WL 2634172, at *2 (S.D.N.Y. June 16, 2017). The facts summarized below are taken from the Complaint and the affidavits and accompanying exhibits submitted by Plaintiff.

PMI and Manno Associates, Inc. are domestic business corporations organized under the law of New York. (Complaint ¶¶ 13–14; Answer ¶¶ 13–14). Peter Manno, Sr. is the President and a shareholder of PMI. (Complaint ¶ 15; Answer ¶ 15). In or about May 2013, Defendants hired Plaintiff as a security guard to work at locations in the New York metropolitan area. (Complaint ¶ 21; Answer ¶ 21). Plaintiff worked for Defendants on an hourly basis until in or about June 2014. (Complaint ¶¶ 22–23; Answer ¶¶ 22–23). In their answer, Defendants admitted that, at relevant times, Plaintiff was their "employee" as defined by the FLSA and NYLL and that Plaintiff was a "non-exempt" employee under the FLSA. (Complaint ¶¶ 6, 12; Answer ¶¶ 6, 12).

During her employment by Defendants, Plaintiff received twenty-three paychecks, fifteen of which were on an account in the name of defendant "Manno Associates Inc." and eight of which were on an account in the name of "PMI." (DeNoyer Aff. ¶ 5). Plaintiff was paid at a rate of $9.00 per hour, and her overtime rate, to the extent that Defendants paid the overtime wages Plaintiff was owed, was $13.50 per hour. (DeNoyer Aff. ¶ 8).

Plaintiff kept track of the actual hours that she worked each day by writing the amount in a loose leaf notebook that she brought with her to her work location each day, and on a regular basis she summarized the total hours she worked over the prior period of approximately one week or less in the notebook. (DeNoyer Aff. ¶ 9). In addition, on occasion, Plaintiff kept a record of the actual hours she worked by writing that amount on the pay stub that pertained to the corresponding work days. (*Id.*) In support of her claim for damages, Plaintiff submitted excerpts from her loose leaf notebook and copies of the checks she received with the corresponding pay stubs. (Docket No. 63-7; *see also* DeNoyer Aff. ¶ 10). Plaintiff also submitted a chart

("Plaintiff's Chart") setting forth the back pay that she claims to be owed. (Docket No. 63-8; *see also* DeNoyer Aff. ¶¶ 10, 12).

From the first week she worked for Defendants, Plaintiff was not paid for hours that she worked and not paid overtime wages that she had earned. (DeNoyer Aff. ¶ 9). Plaintiff asserts that the total amount of non-overtime wages that she is owed is $7,317.00, and the total amount of overtime pay she is owed is $9,569.75. (DeNoyer Aff. ¶ 13; *see also* Plaintiff's Chart). Thus, Plaintiff asserts that the total amount of wages and overtime pay that Defendants owe her is $16,886.75. (*Id.*)

In or about July 2013, Plaintiff contacted defendant Peter Manno, Sr. regarding her underpayment, and he told Plaintiff that he did not have time to discuss the issue. (DeNoyer Aff. ¶ 15). Plaintiff followed up with phone calls to Mr. Manno approximately fourteen more times while employed by Defendants, but he never addressed the problem. (*Id.*). According to records obtained by Plaintiff's counsel from the New York State Department of Labor, at least nine other employees have made wage claims against PMI for work provided in, among other years, 2011 and 2012, before Plaintiff began her employment in June 2013. (*See* Malley Decl. ¶ 8; Malley Aff. ¶¶ 16–18; Docket No. 63-11).

Plaintiff also seeks to recover attorneys' fees in the amount of $27,512.50 and costs in the amount of $1,223.63. (Malley Aff. ¶ 3). In support of her claim for attorneys' fees and costs, Plaintiff submitted contemporaneous billing records prepared by her attorneys, the firm of Smith, Buss and Jacobs, LLP. (Docket No. 63-10; *see also* Malley Aff. ¶¶ 4–15).

## II. LEGAL STANDARDS

As noted above, where a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *Ortega*, 2017 WL

2634172, at *2. The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. *Id.* Nonetheless, a court is required to determine whether the plaintiff's allegations establish the defendants' liability as a matter of law. *Id.*

Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty. *Id.* at *4. The court must review such evidence and grant the party seeking damages all "reasonable inferences" that the evidence suggests. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default. *Ortega*, 2017 WL 2634172, at *4.

To assess whether the plaintiff has articulated a sufficient basis for damages, a court has the discretion (but is not required) to hold a hearing to determine the amount of damages that should be awarded on a default. *See* Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Here, an evidentiary hearing was not necessary because the documents submitted by Plaintiff provide a sufficient basis from which to evaluate the fairness of the damages requested.

"An employee who brings an action under the FLSA for unpaid wages must prove that he performed the work and was not compensated properly for his time." *Polit v. Glob. Foods Int'l Corp.*, No. 14-CV-07360 (SN), 2017 WL 1373907, at *2 (S.D.N.Y. Apr. 13, 2017). Under both state and federal law, an employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); *see also* 12 N.Y.C.R.R. § 142-2.6(a) ("Every employer shall establish,

maintain and preserve for not less than six years, weekly payroll records . . . ."). In the case of a default, the defaulting defendants deprive the plaintiff of the necessary employee records, thus hampering the plaintiff's ability to prove her damages. *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *4 (S.D.N.Y. Mar. 6, 2017), *report and recommendation adopted*, 15-cv-08194, 2017 WL 1314123 (S.D.N.Y. Apr. 6, 2017). Consequently a plaintiff may meet her burden of proof by relying on recollection alone to establish that she performed work for which she was improperly compensated. *Id.* Moreover, in the absence of rebuttal by defendants, the employee's recollection and estimates of hours worked are presumed to be correct. *Id.* Under New York law, the courts go one step further and require that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." *Id.* (quoting NYLL § 196-a).

## III. DISCUSSION

### A. Unpaid Regular and Overtime Wages

Pursuant to the FLSA, an employee must be paid at least the federal statutory minimum wage for the first forty hours that he or she worked in a given work week. 29 U.S.C. § 206(a). Thus, where an employee is not paid at least the minimum wage, the FLSA will provide recovery of the statutory minimum wage for the first forty hours per week. In contrast, pursuant to the NYLL, a prevailing plaintiff is entitled to recover the full amount of wages owed, not just the statutory minimum wage for the hours worked. *See* NYLL § 198(3) ("All employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action . . . ."). "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Ortega*, 2017 WL 2634172, at *2 (quoting

6

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y.

May 2, 2011), *report and recommendation adopted*, No. 10 Civ. 3635(LAK), 2011 WL 2038973

(S.D.N.Y. May 24, 2011)). Additionally, both the FLSA and the NYLL provide that a non-

exempt employee must be paid one and one-half times their regular rate for hours worked in

excess of forty hours per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

Here, Plaintiff asserts that, for regular hours she worked, she was not paid the agreed-

upon wage of $9.00 per hour, which was greater than the federal minimum wage at the relevant

time. Because the NYLL provides a greater amount of relief under such circumstances, the

Court need only address damages under the NYLL. *See Martinez v. Dannys Athens Diner Inc.*,

No. 16-cv-7468 (RJS), 2017 WL 6335908, at *3 (S.D.N.Y. Dec. 5, 2017) ("Where, as here, a

plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to

award damages 'under the statute providing the greatest amount of relief.'" (quoting *Gamero v.

Koodo Sushi Corp.*, No. 15 Civ. 2697 (KPF), 2017 WL 4326116, at *11 (S.D.N.Y. Sept. 28,

2017))).

Due to irregularities in the calculations in Plaintiff's Chart,[2] the undersigned performed

independent calculations based on the data contained in the "Actual Hours Worked" and the

"Gross Pay" columns in the chart.[3] The calculations, which are reflected in the Appendix

included at the end of this Report and Recommendation, were performed by (1) adding together

---

[2] Plaintiff's Chart appears to contain numerous small calculation errors and inconsistencies. (*See* Docket No. 63-8). For example, the row for "Week 1" of the pay period February 10, 2014 to February 23, 2014 indicates that Plaintiff was paid for "39.5" hours, yet that row lists "34.50" in the column "Missing Regular Hours," instead of "0.5" hours. (Docket No. 63-8 at 2). As another example, the row for "Week 1" of the pay period January 27, 2014 to February 9, 2014 lists "0.00" in the column for "Missing Regular Hours," but it appears that row should reflect "8.5" missing regular hours. (*Id.*) Additionally, the rows for the weeks between May 11, 2014 and June 8, 2014 list "0.00" in the column "Missing Regular Hours," when it appears those rows should reflect "40.00" missing regular hours per week. (Docket No. 63-8 at 3).

[3] That data appears generally consistent with the notes and pay stubs submitted by Plaintiff. (*Compare* Docket No. 63-7 *with* Docket No. 63-8).

the number of hours Plaintiff worked each week up to forty hours, and (2) adding together the number of hours Plaintiff worked each week beyond forty hours. From this calculation, it appears that Plaintiff worked a total of 1,968 non-overtime hours and a total of 1,062 overtime hours during the fifty-six weeks at issue. (*See infra* Appendix). Based on these figures, Plaintiff earned a total of $32,053.50, which is the number of non-overtime hours multiplied by the agreed hourly rate of $9.00 per hour, plus the number of overtime hours multiplied by the overtime rate of $13.50 per hour. (*Id.*). Plaintiff received total gross pay of $14,977.65.[4] (*Id.*). Deducting the total gross pay received from the total amount earned, Plaintiff is owed $17,075.85 in unpaid regular and overtime wages. This figure is about $200 more than the $16,886.75 calculated and sought by Plaintiff. Accordingly, Plaintiff has shown with reasonable certainty that she is entitled pursuant to NYLL § 198(3) to $16,886.75 (the lesser amount) in unpaid wages and overtime pay.[5] *See Ortega*, 2017 WL 2634172, at *4 ("In assessing actual damages, inconsistencies in the plaintiff's submissions should be resolved in favor of the defendants."). As Plaintiff's employers, Defendants should be held jointly and severally liable for this amount. *See Kernes v. Glob. Structures, LLC*, No. 15cv00659(CM)(DF), 2016 WL 880199, at *10 (S.D.N.Y. Mar. 1, 2016) (concluding that corporation and corporate officer should be held jointly and severally liable pursuant to the FLSA and NYLL), *report and recommendation adopted by*, Memo Endorsement, dated Mar. 1, 2016, Docket No. 27.

---

[4] The total gross pay was determined by adding together the figures in the "Gross Pay" column in Plaintiff's Chart.

[5] Under the NYLL, in addition to receiving damages for unpaid regular wages and overtime, an employee may be entitled to receive "spread-of-hours" pay, which is an additional hour of pay at the basic minimum hourly rate for any workday that lasts longer than ten hours. *See* 12 N.Y.C.R.R. § 146-1.6(a-c). Here, the Court need not address spread-of-hours damages because Plaintiff has not sought them in her inquest submissions. (*See* Malley Decl. ¶ 6).

## B. Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages.[6] *Villar v. Prana Hosp., Inc.*, No. 14 Civ. 8211 (RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017). "Pursuant to the NYLL, a prevailing employee is entitled to liquidated damages in the amount of 100% of unpaid wages accrued unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." *Polit*, 2017 WL 1373907, at *6 (citing NYLL §§ 198(1-a), 663(1)). Defendants have not established that they had a good faith basis for believing that their underpayment of wages was in compliance with the NYLL. Moreover, Plaintiff adequately alleges that Defendants' violations of the FLSA and NYLL were not in good faith. (Complaint ¶¶ 26–27, 35, 42–46; *see also* DeNoyer Aff. ¶ 15 (stating that Plaintiff repeatedly notified Defendants of underpayment); Docket No. 63-11 (reflecting that Defendants received previous wage complaints from other employees)). Accordingly, Plaintiff is entitled to liquidated damages in the amount of $16,886.75—*i.e.*, the amount of her actual lost wages as determined above.[7]

## C. Attorneys' Fees

The FLSA and the NYLL provide for an award of reasonable attorneys' fees to a prevailing plaintiff in a wage-and-hour action. 29 U.S.C. § 216(b); NYLL § 198. District courts have broad discretion when awarding a fee, but must clearly explain the reasons supporting an award. *Ortega*, 2017 WL 2634172, at *6. Courts ordinarily award a lodestar fee, which is the

---

[6] In a recent unpublished decision, the Second Circuit stated that liquidated damages should be awarded under the FLSA or the NYLL, but not both. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). Here, the Court need only address liquidated damages under the NYLL because Plaintiff can recover liquidated damages under the NYLL at least as great as those under the FLSA, and Plaintiff does not seek to "stack" liquidated damages. (*See* Malley Decl. ¶ 6).

[7] The Court need not address whether Plaintiff is entitled to pre-judgment interest, as Plaintiff does not seek pre-judgment interest in her inquest submissions. (*See* Docket Nos. 62, 63, 63-1).

product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively. *Id.* The plaintiff must produce contemporaneous time records indicating, for each attorney, the date, the hours expended and the nature of the work done. *Id.*

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2005) (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see also Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009).

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Here, Plaintiff seeks to recover attorneys' fees in the amount of $27,512.50. (Malley Decl. ¶ 6). Plaintiff's counsel has submitted contemporaneous billing records reflecting a total of 85.40 hours of services performed. (*See* Docket No. 63-10; Malley Aff. ¶ 4). Plaintiff's lead

counsel, John J. Malley, recorded 64.50 hours at a billing rate of $375 per hour. (Malley Aff. ¶ 6). He has been practicing law for approximately twenty-five years and has regularly represented clients in employment matters for approximately six years. (Malley Aff. ¶ 6). In addition, Michael Coppa, an associate, worked 7.5 hours at his initial rate of $175 per hour and then at an increased rate of $250 per hour. (Malley Aff. ¶ 10). Three experienced paralegals worked 13.4 hours at a rate of $125 per hour. (Malley Aff. ¶¶ 11–13).

The requested rates for these two attorneys and three paralegals are broadly in line with fees awarded by courts in the Southern District of New York in other FLSA cases. *See Ortega,* 2017 WL 2634172, at *7 (awarding rates between $425 and $250 per hour based on attorney experience and collecting cases). Accordingly, the undersigned finds the requested rates to be reasonable.

Upon review of the billing records submitted by Plaintiff, (*see* Docket No. 63-10), the tasks performed and number of hours recorded appear generally reasonable in light of the circumstances of this case.[8] However, certain billing entries appear to reflect work performed in connection with a claim that Plaintiff filed with the Department of Labor, which she later withdrew so she could recover damages in this action. (*See* Docket No. 63-10 at 2–3; DeNoyer Aff. ¶ 16).[9] That work is too attenuated for the fees associated with it to be recovered in this action. Accordingly, a deduction in the amount of $362.50 is warranted to adjust for work performed in connection with the withdrawn Department of Labor claim. Therefore, I

---

[8] The 85.40 hours of work performed might be high for a "typical" default, in which the defendants fail to respond to the plaintiff's complaint. Here, however, Defendants filed an answer and did not default until after their attorney withdrew from the case. This required Plaintiff's counsel to spend additional time conferring with opposing counsel, preparing initial disclosures, attending court conferences, and drafting discovery demands. (*See* Docket No. 63-10 at 2–3).

[9] In particular, the entries at issue bear the following "Fee IDs": 461778 ($25.00); 463494 ($37.50); 463559 ($75.00); 463568 ($75.00); 463584 ($75.00); and 470496 ($75.00). (*See* Docket No. 63-10).

recommend the Court award attorneys' fees in the amount of $27,150.00 (*i.e.*, the amount requested, $27,512.50, minus the $362.50 adjustment).

## D.  Costs

Plaintiff also seeks to recover costs in the amount of $1,223.63, which were incurred on behalf of Plaintiff for court filing fees, process server fees, overnight delivery charges, charges for court calendar services and parking and travel charges. (Malley Aff. ¶¶ 15; Docket No. 63-10 at 6–8).  Plaintiff "is entitled to 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Polit*, 2017 WL 1373907, at *9 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).  The costs sought by Plaintiff appear reasonable.  Therefore, I recommend the Court award costs in the amount of $1,223.63.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $62,147.13, representing damages for unpaid wages and overtime pay in the amount of $16,886.75, liquidated damages in the amount of $16,886.75, attorneys' fees in the amount of $27,150.00 and costs in the amount of $1,223.63.  The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* Defendants at the following three addresses:[10]

Peter Manno, Sr.
6 Wexford Lane
Oceanside, NY 11572

Manno Associates, Inc.
606 Johnson Avenue, Ste. 29
Bohemia, NY 11716

PMI Security
60 E 42nd Street, Ste. 4600
New York, NY 10165
Attn: Peter Manno

---

[10] These are the last known addresses of Defendants according to the affidavit of service filed by Plaintiff on May 24, 2017. (Docket No. 63-13).

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from receipt of this Report and

Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for

computing time). If copies of this Report and Recommendation are served upon the parties by

mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written

objections. *See* Fed. R. Civ. P. 6(d). Objections and responses to objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable

Kenneth M. Karas at the United States District Court, Southern District of New York, 300

Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at

said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Kenneth

M. Karas and not to the undersigned. Failure to file timely objections to this Report and

Recommendation will preclude later appellate review of any order of judgment that will be

rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga*

*Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).


Dated:    January 23, 2018
          White Plains, New York


                                    **RESPECTFULLY SUBMITTED:**

                                    JUDITH C. McCARTHY
                                    United States Magistrate Judge

**APPENDIX**

| Week | Hours Actually Worked | Regular Hours Worked | OT Hours Worked | Gross Pay |
|---|---|---|---|---|
| 1 | 50.0 | 40.0 | 10.0 | $198.00 |
| 2 | 46.5 | 40.0 | 6.5 | $0.00 |
| 3 | 38.0 | 38.0 | 0.0 | $0.00 |
| 4 | 41.0 | 40.0 | 1.0 | $0.00 |
| 5 | 26.5 | 26.5 | 0.0 | $355.50 |
| 6 | 13.5 | 13.5 | 0.0 | $441.00 |
| 7 | 80.5 | 40.0 | 40.5 | $684.00 |
| 8 | 49.0 | 40.0 | 9.0 | $0.00 |
| 9 | 49.0 | 40.0 | 9.0 | $441.00 |
| 10 | 53.5 | 40.0 | 13.5 | $0.00 |
| 11 | 41.0 | 40.0 | 1.0 | $504.00 |
| 12 | 41.0 | 40.0 | 1.0 | $0.00 |
| 13 | 80.5 | 40.0 | 40.5 | $747.00 |
| 14 | 83.0 | 40.0 | 43.0 | $0.00 |
| 15 | 83.0 | 40.0 | 43.0 | $1,030.50 |
| 16 | 91.0 | 40.0 | 51.0 | $0.00 |
| 17 | 91.5 | 40.0 | 51.5 | $990.00 |
| 18 | 82.0 | 40.0 | 42.0 | $0.00 |
| 19 | 82.0 | 40.0 | 42.0 | $1,206.00 |
| 20 | 40.0 | 40.0 | 0.0 | $0.00 |
| 21 | 74.0 | 40.0 | 34.0 | $0.00 |
| 22 | 84.0 | 40.0 | 44.0 | $0.00 |
| 23 | 90.0 | 40.0 | 50.0 | $774.00 |
| 24 | 74.0 | 40.0 | 34.0 | $0.00 |
| 25 | 42.0 | 40.0 | 2.0 | $0.00 |
| 26 | 42.0 | 40.0 | 2.0 | $0.00 |
| 27 | 42.0 | 40.0 | 2.0 | $774.00 |
| 28 | 42.0 | 40.0 | 2.0 | $0.00 |
| 29 | 42.0 | 40.0 | 2.0 | $794.25 |
| 30 | 42.0 | 40.0 | 2.0 | $0.00 |
| 31 | 0.0 | 0.0 | 0.0 | $378.00 |
| 32 | 42.0 | 40.0 | 2.0 | $0.00 |
| 33 | 74.0 | 40.0 | 34.0 | $796.50 |
| 34 | 74.0 | 40.0 | 34.0 | $0.00 |
| 35 | 124.0 | 40.0 | 84.0 | $387.00 |
| 36 | 40.0 | 40.0 | 0.0 | $387.00 |

| | | | |
|---|---|---|---|
| 37 | 82.0 | 40.0 | 42.0 | $418.00 |
| 38 | 74.0 | 40.0 | 34.0 | $360.00 |
| 39 | 74.0 | 40.0 | 34.0 | $355.50 |
| 40 | 74.0 | 40.0 | 34.0 | $387.00 |
| 41 | 64.0 | 40.0 | 24.0 | $288.00 |
| 42 | 54.0 | 40.0 | 14.0 | $468.00 |
| 43 | 40.0 | 40.0 | 0.0 | $306.00 |
| 44 | 49.0 | 40.0 | 9.0 | $603.00 |
| 45 | 32.0 | 32.0 | 0.0 | $0.00 |
| 46 | 50.5 | 40.0 | 10.5 | $0.00 |
| 47 | 48.0 | 40.0 | 8.0 | $468.00 |
| 48 | 0.0 | 0.0 | 0.0 | $0.00 |
| 49 | 18.5 | 18.5 | 0.0 | $0.00 |
| 50 | 0.0 | 0.0 | 0.0 | $148.40 |
| 51 | 70.0 | 40.0 | 30.0 | $0.00 |
| 52 | 70.0 | 40.0 | 30.0 | $0.00 |
| 53 | 70.0 | 40.0 | 30.0 | $0.00 |
| 54 | 70.0 | 40.0 | 30.0 | $0.00 |
| 55 | 0.0 | 0.0 | 0.0 | $144.00 |
| 56 | 0.0 | 0.0 | 0.0 | $144.00 |
| | 3030.5 | 1968.5 | 1062.0 | $14,977.65 |

**Amount Earned:**
$(1968.5 \times \$9.00) + (1062.0 \times \$13.50) =$ $32,053.50
**Minus Gross Pay:**  - $14,977.65
**Amount Owed:**  $17,075.85